## WARDER v. SEITZ, Appellant.

### Division One, June 12, 1900.

1. **Express Contract: QUANTUM MERUIT: ATTORNEY'S FEE.** The petition stated that the plaintiff was employed as an attorney by defendant to aid her in obtaining a larger amount of her deceased brother's property than had been left her by will, and that all that was said about his compensation was that at the time he was employed he told defendant that "the customary fee for such services was five per cent if settled out of court, and ten per cent if settled after suit, upon whatever amount was received; that defendant made no objection to said fee, but instructed plaintiff to take charge of her interests and proceed in the premises to secure a settlement by compromise, or failing in that, to bring suit to break and set aside said will." The petition also alleged that the services were rendered at the special instance and request of defendant and were reasonably worth the sum of five thousand dollars. *Held,* that the petition bases plaintiff's cause of action on a *quantum meruit,* and not on an express contract.

2. **Contract: SUIT FOR ATTORNEY'S FEES: INSTRUCTIONS: ENLARGING CAUSE OF ACTION.** In a suit for attorney's fees, where the defendant denies that she employed plaintiff as her attorney, but in a mere

business capacity to attend to her case, and there is substantial evidence to support her theory of his employment, the jury should be told that if defendant did not employ plaintiff as a lawyer he could not recover, and also, that if he performed the services, but that they were not legal services, but business transactions only, the expert testimony of other lawyers tending to show the value of legal services as such, could not be considered. And a refusal of such instructions is reversible error.

3. **Instructions:** ABSTRACT DECLARATIONS. Instructions should conform to the facts proved, and be explanatory of the law in its application to such facts. Mere abstract declarations of law should not be given.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,*
Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod & Holden* for appellant.

(1) This action is upon an express contract to pay a definite sum. (a) The petition pleads the contract in terms. (b) The prayer asks judgment for the contract price or sum. (c) The plaintiff's own testimony explicitly stated the contract, not only of employment, but also to pay five per cent of any sum received in compromise or ten per cent of any sum recovered through litigation. (2) A party can not sue on one cause of action and recover upon another. McCormick v. Interstate Ry. Co., 154 Mo. 191; Cole v. Armour, 154 Mo. 333; Haynes v. Trenton, 108 Mo. 130; Stix v. Matthews, 75 Mo. 96; Huston v. Tyler, 140 Mo. 262. (3) An action upon an express contract to pay a stipulated sum is inconsistent with an action upon *quantum meruit* to pay reasonable value. Having declared upon the former, plaintiff can not recover upon the latter. Deatherage Lumber Co. v. Snyder, 65 Mo. App. 568; Eyerman v. Mt. Sinai Cem. Ass'n, 61 Mo. 489; Davis v. Brown, 67 Mo. 313; Traders Bank v. Payne, 31 Mo. App. 521; Halpin v. Manny, 33 Mo.

App. 392; Warson v. McElroy, 33 Mo. App. 553; Lewis v. Slack, 27 Mo. App. 129; Mohney v. Reed, 40 Mo. App. 99; Elliott v. Caldwell, 43 Minn. 357; Huston v. Tyler, 140 Mo. 262. (4) The court therefore erred in overruling defendant's motion to require plaintiff to elect. Ehrlich v. Ins. Co., 88 Mo. 249; Stoddard v. Murdock, 37 Mo. 580. The court erred in refusing to give instructions asked by the defendant numbered two and three. This action was upon an express contract of employment as a lawyer. The petition and the testimony of the plaintiff so show it. The defense explicitly denied any such contract of employment as a lawyer both by answer and by the testimony of the appellant. This, therefore, presented a material issue for the jury, and this instruction properly raised that issue, and the appellant was entitled to have that issue tried by the jury. Beauchamp v. Higgins, 20 Mo. App. 514.

*Wallace & Wallace* and *Fyke, Yates, Fyke & Snider,* for respondent.

(1) This is not an action upon an express contract to pay a definite sum. (a) The petition pleads the facts leading up to the employment, recites in detail the services rendered, and ends (b) with a prayer for judgment, not for a "contract price or sum," but *quantum meruit.* Such a petition can not be construed into a declaration on a contract, express or implied, for a definite sum. Foltz v. Cogswell, 86 Cal. 542. It is nowhere pleaded that defendant agreed to pay $5,000 or any other specified sum, but it is in terms averred that the services rendered "were reasonably worth the sum of $5,000," for which judgment is prayed. Crump v. Rebstock, 20 Mo. App. 37; Henderson v. Mace, 64 Mo. App. 303; Williams v. Railroad, 112 Mo. 491; Mansur v. Botts, 80 Mo. 651; Moore v. Gans & Sons, 113

Mo. 107; Fairfax Co. v. Chambers, 75 Md. 604; Burke. v. Cloughton, 12 App. cases D. C. 182; Van Fleet v. Van Fleet, 50 Mich. 1; Beers v. Kuehn, 84 Wis. 33; Sandoval Mining Co. v. Main, 23 Ill. App. 395.·  (2)  Respondent's instructions numbered 2 and 3 were properly refused.   There was no evidence upon which to base them.   There was no evidence in the case tending to show that Warder performed services other than a lawyer. He was neither jockey nor jumping jack, but attorney, and the whole evidence clearly disclosed that he was so regarded by all concerned.

MARSHALL, J.—The plaintiff alleges that about March 5, 1896, the defendant employed him as an attorney and counsellor at law in connection with her interest in the estate of her deceased brother, George Sheidley; that her brother died testate on the second of March, leaving the defendant and her sister, Sarah Matilda Sheidley, and her two brothers, Henry and William, as his only heirs, and leaving an estate worth eight hundred thousand dollars; that by his will he devised to Henry sixty thousand dollars, to William one hundred thousand dollars in stock and lands worth in all seventy or eighty thousand dollars, to the defendant twenty thousand dollars, and to defendant's three sons ten thousand dollars each, and the remainder of his estate he devised to his sister, Sarah Matilda Sheidley; that the defendant was dissatisfied with the will and wanted one-fourth of the estate or two hundred thousand dollars, and hence she employed plaintiff as her attorney and counsellor to examine and investigate the will, the property and its value, the soundness of the testator's mind and the undue influence of Sarah Matilda Sheidley for the purpose of contesting the will and recovering her interest as heir; and to compromise the matter with her sister.   The petition then charges:   "That at the time he was so employed by defendant he informed her that

the customary fee for such services was five per cent if settled out of court and ten per cent if settled after suit, upon the whatever amount she received. That defendant made no objection to said fee, but instructed plaintiff to take charge of her interests and proceed in the premises to secure a settlement by compromise, or failing in that, to bring suit to break and set aside the will." It is then averred that plaintiff did take charge of defendant's interests "at her special instance and request" and rendered continuous legal services from the fifth of March to the first of June, 1896, "when through his services a satisfactory compromise and settlement was completed whereby defendant received one hundred thousand dollars instead of twenty thousand dollars;" that plaintiff made briefs of the law and evidence to be used in the will contest, of all testimony obtainable affecting the sanity of and the undue influence exercised over the testator, examined the property, and was occupied for two and a half months in the work. The petition then avers that the services rendered the defendant "at her special instance and request" were reasonably worth five thousand dollars, on which the defendant had paid three hundred dollars on May 17, and prays judgment for forty-seven hundred dollars, with six per cent interest from June 1, 1896. The answer is a general denial and a special plea that the claim of plaintiff had been compromised, settled, satisfied and discharged. The reply is a general denial. The trial was had on February 20, 1897, and the jury returned a verdict for $3,575, and after proper steps the defendant appealed.

The plaintiff introduced evidence tending to prove the allegations of his petition and tried his case upon the theory of a direct employment of him as an attorney at law by the defendant without any direct or express contract as to the amount to be paid him, further than that he told her that the usual charge was five per cent if the case was settled out of

court and ten per cent if it was settled after the suit was commenced, and that he was to furnish the bond for costs (she was a nonresident) and if she did not receive anything in excess of the twenty thousand dollars devised her by the will, he was not to charge her anything, but he was to have the per cent above specified on all excess over twenty thousand dollars recovered. Plaintiff detailed all the services he rendered and claimed that the one hundred thousand dollars recovered was the result of his services. He also said that when the controversy was settled by compromise out of court and the money and securities were received by her, she asked him for his bill and he told her he had failed to make it out but would do so and send it to her the next day. The next day, before he had rendered his bill, he received from her a check for $300, with the following note:

"Friend Warder: At your proposition to pay you whatever I thought right for services I herewith inclose you a check for $300, the same as I will have to pay son Earl Seitz. Appreciating all your kindness, I beg to remain, Your friend, Caroline Seitz."

The plaintiff answered the note the next day, acknowledging the receipt of $300, and saying he had credited it upon her account and asking her to send a check for the balance on Monday or Tuesday.

The defendant's son Earl married the daughter of Mrs. John B. Warder, and the plaintiff is Mrs. Earl Seitz's third cousin. The defendant lives in Ohio, and came to Kansas City with her sons to attend the funeral of her brother, and after the funeral went to board at Mrs. Warder's house, where the plaintiff also boarded, and it was there that the plaintiff alleges that the arrangement as to employment was made. The plaintiff and Earl Seitz, the day after the funeral, went together to the probate court and elsewhere looking into the will, the property and the controversy, and on nearly every

occasion went together to see Mr. Stocking, one of the executors, and the attorney for the estate, about compromising the matter. The plaintiff says they first wanted $250,000 and Mr. Stocking first offered $50,000. Then he came down to $150,000 and Mr. Stocking came up to $75,000, and they finally came together at $100,000, but that he insisted upon the deferred payments bearing six per cent interest and Mrs. Seitz wanted security for the deferred payments, but after he had taken Mrs. Seitz to Mr. Homer Reed, the postmaster, and he had advised her that the securities were good, and after he had examined Sarah Matilda's financial status (she was to sign the notes for the deferred payments) and found she was worth about a million dollars, he and Mrs. Seitz concluded to take the notes without security, and Mr. Stocking agreed that the notes should bear six per cent interest after two years from date, that being as early as under the law the plaintiff would be entitled to receive anything from the estate in the regular course of administration.

On the other hand the defendant's evidence tended to show that after she went to Mrs. Warder's house and was talking over the matter with her sons and relatives, the plaintiff thrust himself upon her and offered to assist her; that she did not know he was an attorney at law or that he was proposing to act for her as such, but that she told him that if she had to have a contest she would employ the best "will lawyer" she could find and asked plaintiff who were the best lawyers in Kansas City, and he recommended Fyke, Yates & Fyke; that in going with her sons to examine the will and to see Mr. Stocking she thought and understood that he was simply acting as her friend, and in a business way and she expected to pay him for his services in that capacity, but that she never employed him as her attorney at all and he never rendered her any legal services, but did only what her son was also doing for her, and they generally acted together;

that she never knew he was an attorney or had an office until two or three weeks after he commenced to go with her son to see about the business; that when the compromise papers were drawn up by Mr. Stocking and presented to her for signature, she refused to sign them until she could see a lawyer and started out with the plaintiff to consult Maj. Warner, but when they passed the postoffice the plaintiff persuaded her to consult Mr. Homer Reed, the postmaster, which she did, and upon his advice and the persuasion of her son and the plaintiff, she finally agreed to the compromise; that when the compromise was completed she asked the plaintiff how much she owed him for his services as she wanted to settle the whole matter then, and he replied that he would leave it to her to fix his compensation, and that accordingly she sent him the check for $300 the next day, intending it as a settlement in full, and being the same amount she sent her son, as she believed their labors were the same and what they each did for her of equal value.   Mr. Stocking said the plaintiff and Earl came to see him many times, but that four-fifths of the time he told them that he was too busy to talk to them, and at other times he told them that after the will was probated and the inventory filed he would make Mrs. Seitz an offer of compromise, which would be his ultimatum, and that accordingly he afterwards did make the offer of one hundred thousand dollars and told the plaintiff and Earl that it was that or nothing, and it was accepted just as he made it, except as to making the deferred payments draw interest after two years; that he never made any offer of $50,000, or $75,000, or any other offer except the $100,000; that this was offered because Sarah Matilda Sheidley thought her sister, the defendant, had not been treated fairly, but that the prospect of litigation over the will may have had some influence upon her in making the proposition of compromise.

With the exception of the expert testimony as to the

value of the plaintiff's services, these were the facts shown by the parties respectively at the trial.

## I.

The defendant contends that the petition is based upon an express contract and that the trial court erroneously treated the case as one upon a *quantum meruit*, and that the plaintiff should have been limited to his express contract pleaded.

If the major premise was true the conclusion would necessarily follow, and the case would fall within the principles laid down in Cole v. Armour, 154 Mo. 333, and McCormick v. Interstate Ry. Co., 154 Mo. 191, and the cases in those cases cited and reviewed.

But the contention is untenable for the petition can not fairly be said to be based upon an express contract. The nearest the petition comes to stating an express contract is in the clause wherein it is averred that he told the defendant at the time that he was employed by her that "the customary fee for such services was five per cent if settled out of court and ten per cent if settled after suit, upon whatever amount she received; that defendant made no objections to said fee, but instructed plaintiff to take charge of her interests and proceed in the premises to secure a settlement by compromise, or failing in that, to bring suit to break and set aside said will." And it will be observed that it is not therein or thereby stated that she agreed to pay him that amount, but only that she made no objection to such a fee and this does not make the petition any the less an action of *indebitatus assumpsit*. [Brown v. Kimmel, 67 Mo. 430.] It is not necessary now to decide whether such conduct would amount to an express contract nor whether she would be estopped from denying that she had made such a contract, for the plaintiff had a right to sue on a *quantum meruit* even if there had been

an express contract, and in such event his recovery would not be barred but only limited by the contract price.    [Yates v. Ballentine, 56 Mo. 530; Ehrlich v. Ins. Co., 88 Mo. 249.] The petition is not predicated upon a contract but alleges that the services were rendered at the special instance and request of the defendant and were reasonably worth the sum of five thousand dollars.    These are the apt and appropriate aver-ments in a suit upon a *quantum meruit,* and have no place in a petition based upon an express contract, and they clearly and unmistakably  show the pleader's intention to rely upon a *quantum meruit* and not upon a contract.    The cir-cuit court so treated the petition and case and there was no error in so doing.

## II.

The second error assigned by the defendant is the re-fusal of the trial court to give defendant's second and third instructions, which are as follows:

"2.    If the jury believes from the evidence that defend-ant did not employ plaintiff as a lawyer to perform the al-leged services in question, then plaintiff can not recover and your verdict must be for defendant.

"3.    The jury are instructed that if you find from the evidence that plaintiff performed any services for defendant in and about the estate of her  brother,  George  Sheidley, deceased, but that such services were not legal services, but were business transactions only, then you will not be war-ranted in considering the expert testimony adduced on the trial in this case tending to show the value of legal services as such."

These instructions state the pith of the defendant's whole contention, and express the antithesis of the plaintiff's case.    He claims she employed him as an attorney and that he rendered legal services.    She claims that she did not know

until two or three weeks after she employed him or began to take advantage of his services, that he was a lawyer and never employed him as such, but on the contrary told him if there was to be any contest she wanted to employ the best "will lawyer" she could get, and that in response to her inquiry as to who was the best lawyer in Kansas City he recommended Fyke, Yates & Fyke, and she further testified that when Mr. Stocking had prepared the compromise papers, she refused to execute them until she had consulted a lawyer, and when she left Mr. Stocking's office to do so, intending to consult Major Warner, the plaintiff went with her and persuaded her to consult the postmaster instead. The plaintiff does not deny this incident but practically admits it. These acts on her part tend to support her contention that she did not employ the plaintiff as her attorney and that he was not acting in that capacity for her, else she would not have left Mr. Stocking's office to consult a lawyer, and instead of going with her for that purpose he would have asserted the dignity of the profession and would have insisted upon advising her himself, and upon being denied this prerogative would have refused to act as her attorney further. We do not hold any of this is absolutely conclusive of the rights of the parties in this case, but she so testified, he did not deny it, and it is therefore substantial and persuasive evidence to support her contention. This being true, it was prejudicial error for the court to refuse to put the defendant's theory or side of the case before the jury, as her instructions two and three asked. The instructions given do not cure this error or in any way cover the defendant's contention. The plaintiff's instructions do not require, in express terms, that the jury shall find that the plaintiff was employed by the defendant as an attorney nor that the services rendered were legal services. The only instruction on either side, other than the two now under consideration, that in any way required the jury to

In re Powell's Estate.

find that the plaintiff was employed as an attorney and rendered legal services, was the defendant's eleventh instruction, and this the court refused.   This refusal emphasizes the error which runs through all of the plaintiff's instructions, and the 11th instruction, also, should have been given. The plaintiff's instructions are correct enough in the abstract but are erroneous in the concrete.   Instructions should conform to the facts proved and be explanatory of the law in its application to such facts.   Mere abstract declarations of law serve no good purpose and tend strongly to confuse the jury.

This necessarily results in reversing the judgment of the circuit court and remanding the case for further proceedings in conformity herewith.   It is so ordered.

All concur.