GEORGE WOODRUFF, DEFENDANT IN ERROR v. WILLIAM RUSK AND QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY.—76 S. W. (2d) 709.

Kansas City Court of Appeals. November 13, 1934.

*Scott J. Miller* and *Roger S. Miller* for plaintiffs in error.

*George Woodruff pro se.*

SHAIN, P. J.—The plaintiffs in error have brought this case to this court by a writ of error, seeking to review a judgment of the trial court allowing an attorney's fee, in the case of Rusk v. Quincy, Omaha & Kansas City Railroad Company, to George Woodruff the defendant in error, who claims to have been one of the attorneys for plaintiff in the above entitled case.

Rusk recovered a judgment of five thousand ($5,000) dollars for damages against the railroad company and the railroad company, in due time, filed its motion for a new trial. Thereafter and without notice and without knowledge or consent of Woodruff, defendant in error, Rusk compromised and settled his case and was paid by the railroad company in accordance with the settlement.

The settlement between Rusk, the plaintiff, and the defendant railroad company was for the sum of two thousand eight hundred and seventy-five ($2,875) dollars, which sum was paid by the defendant railroad company to Rusk, the plaintiff in said suit, and there was a stipulation filed in the case for a dismissal of the cause. This stipulation appears to be signed by the defendant in error herein, however, the showing is clearly to the effect that defendant in error was not present and did not sign.

After the settlement and filing of the stipulation, Mr. Woodruff, defendant in error, filed a motion in the case having for its purpose an allowance of an attorney fee to him for services rendered by him in the case. Thereafter, this motion coming on for hearing, the issues were tried before the court and the court found the issues in favor of Woodruff, defendant in error herein, fixing the value of his services at five hundred ($500) dollars. Judgment was duly entered in accordance therewith and this writ of error brings said judgment before us for review.

The facts, as gleaned from the record, are to the effect that William Rusk filed action for damages for personal injuries against the Quincy, Omaha & Kansas City Railroad Company in the Circuit Court of Grundy County, Missouri. Rusk had entered into a written contract with attorney L. P. Robinson to prosecute his suit and said contract provided that said Robinson should receive forty per cent of the amount recovered for his services in the case. There were two trials of the case, the first resulting in a hung jury.

It appears that some time before the first trial there were negotiations entered into whereby Woodruff, defendant in error herein, was

engaged to help Mr. Robinson in the preparation and trial of the case.

The issue involved, in the matter now before us, is as to whether Mr. Woodruff was employed by Mr. Robinson under a special contract or was the employment of such a general nature as to obligate Mr. Rusk for payment for Mr. Woodruff's services or give him a lien on the judgment.

There is no dispute as to the nature and kind of services performed by Mr. Woodruff. He interviewed witnesses, looked up the law, helped to prepare instructions and was active in the conduct of the first trial wherein there was a hung jury. After the mistrial he was active in preparing an amended petition. The case at the second trial was tried upon this amended petition and Mr. Woodruff's name appeared thereon as one of the attorneys for the plaintiff. Mr. Rusk, in his testimony, admits that Mr. Woodruff went with him to the Quincy, Omaha & Kansas City Railroad right-of-way and examined some ties and further testified that he knew Mr. Woodruff went out to the place where Mr. Rusk was injuried and discussed with gentlemen how the tie fell on Mr. Rusk. Rusk further testified that Woodruff had gone with him and his father and Mr. Robinson to the scene of the accident and made suggestions about taking pictures.

It appears that, sometime prior to the second trial of the Rusk case, Mr. Robinson died. After Robinson's death Mr. Rusk went to Chillicothe, Missouri, and entered into a written contract with attorney Scott J. Miller to prosecute his suit and therein agreed to pay to Mr. Miller fifty per cent (50%) of the amount recovered as reimbursement for his services in the case. Thereafter, the cause came on for trial and Mr. Miller requested Mr. Woodruff to sit in the case, which he did, and it is shown that Mr. Woodruff, while not taking as active a part as he did in the first case, did render service in the trial wherein a five thousand ($5,000) dollar judgment was had in favor of Mr. Rusk. Mr. Woodruff testified that, upon the railroad company filing a motion for new trial, he looked up law on points raised; as to the matters of stipulations and settlement he was not consulted and was ignorant of all said matters until he received a check from Mr. Miller for one hundred ($100) dollars purporting to be for his fee in the case, which check he refused to accept and deposited same in court when he filed this motion.

As to the employment of Mr. Woodruff in the case, the testimony of Mr. Rusk is to the effect that shortly before the first trial he, Mr. Robinson and Mr. Woodruff were in Robinson's office and Mr. Robinson said: "He had got Mr. Woodruff to help him in the case." Mr. Rusk admitted, upon cross-examination, that he and Mr. Robinson on one occasion had gone to Chillicothe and attempted to hire Davis and Ashby to assist. The purport of Mr. Rusk's oral testimony is

plainly to the effect that he never personally employed Mr. Woodruff. However, his attitude toward Mr. Woodruff in the proceedings as disclosed by the evidence is a circumstance that must be considered in connection with all of the evidence.

Mr. Woodruff, defendant in error, testified that prior to the first trial of the Rusk case, Mr. Rusk, Mr. Robinson and himself had a meeting in Mr. Robinson's office and Mr. Robinson at that time told Mr. Rusk, in substance, "I have asked Mr. Woodruff to help *us* in the case." (Italics ours.) Woodruff further testified that Mr. Robinson mentioned the fact that, "I like to dig around after the law of a case and told Mr. Rusk he had told me about his contract and made the remark, as I recollect, in words about to the effect, I don't say this is exactly it, but—you are getting two lawyers for the price of one." Mr. Woodruff's testimony is to the effect that Mr. Rusk made no response, but further testified that Mr. Rusk did not make objection.

Mr. Scott J. Miller testified that after Mr. Rusk came to him he went to Trenton, Missouri, and got Mr. Robinson's file in the case and went through same and, after Mr. Rusk had repeatedly come to his office, he entered into a written contract with him on a fifty per cent (50%) basis. In explanation of the fifty per cent charge, Mr. Miller said: "I felt that I was to pay the Robinson estate." Mr. Miller further testified that the amended petition, which was signed by both Robinson and Woodruff, suited him and he tried the case on that petition. Mr. Miller further testified that he asked Mr. Woodruff to sit with him in the trial, wherein the five thousand ($5,000) dollar judgment was had.

### OPINION.

The question, as to whether or not the defendant in error was so employed as to obligate Mr. Rusk and the question of whether or not the fee for his services attached to the judgment so as to entitle him to a lien thereon for his services, presents the issues of fact. The above questions were duly presented to the trial court and the trial court resolved these questions in favor of the defendant in error and the value of the services was fixed at five hundred ($500) dollars.

Section 11716, Revised Statutes of Missouri, 1929, provides as follows:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come;

and cannot be affected by any settlement between the parties before or after judgment.''

In determining the method of enforcing attorney's lien, the nature of the right and the particular facts of each case must determine. [State v. Roehrig, 8 S. W. (2d) 998.]

From the showing made by the record, it appears that all parties to this controversy have treated the motion of the defendant in error as presenting matters of law and fact to be determined by the court at the close of all evidence offered. Under the proceedings as shown, it is needless for us to cite authority to the effect that at least great deference to the finding of fact by the trial court must be given by us, if there is substantial evidence from which inference may be drawn to support the trial court's findings.

In the case of Welker v. Wabash Ry. Co. et al., 234 S. W. 520, is found a case wherein the procedure was by motion after settlement, as in the case at bar. In the Walker case, this court held that the trial court's finding of fact on conflicting evidence is conclusive on the Court of Appeals. *Certiorari* was denied by the Supreme Court in the above case.

While there is no evidence presented in the record herein as to the amount of attorney fee, if any, the defendant in error was to receive for his services, still if there was an implied contract there is a right to recover on *quantum meruit*. [State ex rel. v. Roehrig, 8 S. W. (2d) 998.]

In passing upon the issues as presented on appeal, we must, of course, consider the evidence in its most favorable light to the defendant in error. We must, therefore, conclude that Mr. Rusk was told by his attorney Robinson that he had employed the defendant in error, ''to help us in the case; that he told Mr. Rusk he had told the defendant in error of the nature of the written contract; and that he had told Mr. Rusk he was getting the services of two lawyers at the price of one.'' It must be further concluded that Mr. Rusk made no objections and that thereafter the defendant in error was performing duties in the case with the knowledge and acquiescence of Mr. Rusk. It must be further concluded that the services of defendant in error were of value to Mr. Rusk in the prosecuting of his suit.

Referring to the evidence of Mr. Miller, to the effect that he charged an additional per cent because he would have to pay Mr. Robinson's estate, we suggest that an inspection of the papers in his possession would have suggested a similar attitude toward the defendant in error. Evidently in making stipulation and settlement, it is shown that all parties considered that the defendant in error was interested in the case and thought that his signature was requisite to the stipulation and settlement. If the defendant in error had no interest in the judgment had in the case, then, of course, his signature had no place

in the stipulation for settlement. We conclude that the trial court had the right to draw reasonable inference from the shown conduct of the parties. This is true because before the lien, if a lien, is discharged there must be the written consent of the attorney. Even knowledge does not waive the written consent. [Wilson v. St. Joseph & G. I. Ry. Co., 211 S. W. 897.]

If the defendant in error had been present and signed the stipulation, the appellant railroad company, of course, would have been relieved of further responsibility in the matter.

As we conclude that the procedure followed is in accordance with well established law, and as we conclude there was substantial evidence to support the trial court's finding of fact, the judgment should be affirmed. It is so ordered. All concur.