MONTGOMERY, J., and BARNEY, C.J., CONCURS.

Jan RISCH, Plaintiff/Respondent,

v.

Wayne RISCH, Defendant/Appellant.

No. 24136.

Missouri Court of Appeals,
Southern District,
Division Two.

April 17, 2002.

Gregory J. Smith, Mark C. Fels, Smith & Fels, P.C., Springfield, MO, for Appellant.

No brief filed by Respondent.

JAMES K. PREWITT, Judge.

Wayne Risch ("Appellant") appeals from a decision of the Circuit Court of Greene County, the Honorable Max E. Bacon presiding, which found that he owed his former wife, Jan Risch ("Respondent"), $3,770.09, plus interest, for breach of a verbal agreement by which he had promised to take sole responsibility for payment of a home equity loan secured by the couple's marital home. Appellant argues that the court erred in considering the alleged verbal contract between the parties when the home equity loan document was a valid and enforceable contract under which both parties were equally liable and that the court should have found Respondent liable to him for contribution. Finding that evidence of the verbal contract was not barred by the parol evidence rule, we affirm the trial court's judgment.[1]

## Facts

Appellant and Respondent divorced in 1982, but continued to live together in their marital residence for a "couple" of years following the divorce. Prior to their dissolution, Appellant and Respondent executed a deed of trust and a promissory note on the residence, which was "to be sold and split" pursuant to the dissolution decree. On April 14, 1987, sometime after the divorce, they executed a second deed of trust and promissory note on the residence. The promissory note was for a home equity line of credit. The note stated that Appellant and Respondent would be jointly and severally liable for the amount borrowed.

The parties agree that the primary purpose of this second agreement was to permit Appellant to borrow money in order to get a lower interest rate on a car loan. Appellant wrote a check on the home equity loan to Ford Motor Credit Company to pay off his vehicle in the sum of $10,985.65 on April 14, 1987. That day, he withdrew an additional $1,500 for unspecified pur-

---

1. Only Appellant filed a brief in this matter. Although there is no penalty for failure to file a brief, this court must adjudicate Appellant's claim without the benefit of whatever argument, if any, Respondent could have made in response. See Estate of Klaas, 8 S.W.3d 906, 908 (Mo.App.2000).

poses. On April 22, 1987, Respondent withdrew $1000 from the credit line and deposited it into her bank account.[2]

Respondent claimed that Appellant verbally agreed to assume sole responsibility for payment of the second promissory note at the time that note was executed. This alleged agreement was memorialized in a notarized document Appellant signed. The note states, "I, Wayne C. Risch, relieve Janice Marie Risch from Second Mtg. on [the residence]. Approximate balance $8,800.00 as of 5/28/91. I will be solely responsible."

Respondent paid the $3,770.09 still due on the note on September 13, 1995, when she refinanced the home. Respondent claims that she was required to pay off the home equity line of credit in order to refinance the home. Subsequent to paying the remainder due, Respondent sent Appellant a demand letter, asking Appellant to reimburse her for the $3,770.09 Respondent paid the bank. Appellant refused, and Respondent filed a petition with the Associate Division of the Circuit Court Greene County, seeking reimbursement for the $3,770.09 she paid the bank, plus interest, attorney's fees, and costs. The petition stated,

> 3. On April 14, 1987, [Respondent and Appellant] entered into a Deed of Trust with Boatman's Bank of Springfield in which they refinanced a second mortgage on the residence . . .
>
> 4. In consideration of the refinancing of this second mortgage, [Appellant] received a lump sum payment of $10,000 from Boatman's Bank.
>
> 5. [Appellant] used these proceeds to purchase a Lincoln vehicle.

> 6. On May 28, 1991 [Appellant] entered into a written agreement that he would be solely responsible for repayment of the balance of this loan in the amount of $8,800.00.
>
> 7. [Appellant] has failed to make all of the payments under this agreement, and therefore, [Respondent] has made sporadic payments on behalf of [Appellant], along with a payoff payment of $3,770.09 made on September 13, 1996 to Boatman's Bank . . .
>
> 8. [Respondent] has made several requests for reimbursement of said funds without response from [Appellant].
>
> 9. On November 7, 1996 a demand letter was mailed by [Respondent] to [Appellant], but [Appellant] has failed and refused and continues to refuse to pay said sums.

Appellant contends that because Respondent paid off the note without telling him, there was nothing for him to pay, and he had no obligation to pay Respondent personally.

Appellant filed a counterclaim, requesting contribution from Respondent in the amount of $15,000 (which was reduced to $4,914.70 at trial), plus interest and costs.

A non-jury trial was held on October 27, 1997. The court entered judgment on October 30, 1997, finding the issues in favor of Respondent on her petition and ordering Appellant to pay $3,900.00 plus costs and denying Appellant's counterclaim. An application for a trial de novo was filed on November 6, 1997. Trial de novo was held on October 15, 1998. The court entered its Conclusion & Order on March 10, 1999, again deciding the issues on both claims in favor of Respondent. The court amended that order on January 18, 2001, to denomi-

---

**2.** Presumably, the interest on the second mortgage was less than the interest on the car loan.

nate the order a "judgment." This appeal follows.

### Discussion

■ As this case was tried without a jury, our standard of review is governed by Rule 84.13(d), formerly Rule 73.01(c), and the interpretation of Rule 73.01(c) as set forth in *In re the Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). Thus, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Bowles v. All Counties Inv. Corp.*, 46 S.W.3d 636, 638 (Mo.App.2001).

Appellant relies on four points. In his first point, Appellant claims that the trial court's judgment was not supported by substantial and competent evidence, is against the weight of the competent evidence, and erroneously applies the law, in that it was based upon a purported oral agreement which was not pleaded by Respondent and which constituted inadmissible parol evidence, and because under the Missouri Uniform Commercial Code, § 400.3–116, RSMo, Appellant was entitled to contribution from Respondent.[3]

Respondent did not mention the parties' verbal agreement in her petition. The May 18, 1991 written agreement was pleaded. Respondent's counsel claimed at trial that the verbal agreement did not need to be pleaded, as the written agreement memorialized the prior verbal agreement. The trial court found for Respon-

dent based on Appellant's breach of the verbal agreement, not the later written agreement.[4]

■ Absent the court's discretion directing otherwise, pleadings in the associate circuit division are to be informal. *Davis v. Oaks*, 942 S.W.2d 464, 466 (Mo. App.1997); § 517.031. "Under informal pleading, all that is required is a pleading that sufficiently notifies the defendant of the nature of the claim." *Davis*, 942 S.W.2d at 466. We find that it was sufficient for Respondent to plead the May, 18, 1991 agreement that Appellant would assume responsibility for the debt, as Appellant fully knew the purpose of that agreement and the verbal agreement it was intended to memorialize and admitted as much at trial.[5]

■ "The parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident or erroneous admission." *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 693 (Mo.App.2001). Such evidence "may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written agreement." *Id.* " 'Parol evidence is not admissible to prove a condition precedent if the condition varies, negates, or contradicts the express terms of the writing.' " *Ironite Products Co. v. Samuels*, 985 S.W.2d 858, 862 (Mo.App. 1998) (quoting *Union Elec. Co. v. Fund-*

---

3. Unless indicated otherwise, "the trial court's judgment" refers to the judgment rendered following the trial de novo.

4. In its Conclusion and Order, the court states, "Plaintiff Jan Risch and Defendant Wayne Risch entered into an enforceable and binding verbal contract. Defendant Wayne Risch breached the terms of said verbal contract to the injury of Plaintiff." [L.F. 31.]

5. Over objection by Appellant's counsel, counsel for Respondent asked Appellant about the May 28, 1991 agreement:

   Q: Why did you write that?
   A: I was showing her that I was going to try and do my responsibility. I've never objected to that.

*ways, Ltd.*, 886 S.W.2d 169, 171 (Mo.App. 1994)).

■ Significantly, in this case, the verbal agreement and later written agreement memorializing it were between Appellant and Respondent. The second mortgage, in contrast, was an agreement between Boatman's Bank on one hand, and Appellant and Respondent on the other. Vis-à-vis the bank, Appellant and Respondent had joint and several liability, and had they defaulted on the mortgage, the bank could have sought payment from either or both parties. An agreement only between Appellant and Respondent could not modify their obligation to the bank. But, Appellant and Respondent were free to make whatever agreement between themselves as to who would pay off the second mortgage without affecting their agreement with the bank. *See* 18 AM. JUR.2D, *Contribution* § 27 (1985) (stating, "Although, obviously co-obligors cannot by mutual agreement affect their liability to the common creditor, they may regulate their rights and liabilities as among themselves; and in the determination of the rate or proportion of contribution, their contract fixing the same will be honored"). Thus, the parol evidence rule has no application to this case.

■ Appellant argues that the Uniform Commercial Code section 3.116 controls this case. § 400.3–116, RSMo 2000. That section permits each co-maker to a note the right to contribution from the other to the extent that one pays more than half the payments on the note. *See also In re Estate of Wray*, 842 S.W.2d 211, 214 (Mo.App.1992) (stating that "[p]ersons who sign as makers as part of the same transaction are jointly and severally liable unless the instrument specifies otherwise, and a maker who pays the instrument is entitled to contribution from other co-makers").

Here, however, we have evidence that the benefit inured the parties was grossly unequal. As the trial court found, Appellant received 92% of the benefit from the second mortgage. Thus, it would be extremely unfair to award Appellant contribution from Respondent. *See* 18 AM. JUR.2D, *Contribution* § 23 (1985) (stating, "Since the right to contribution is inherently equitable in nature, the rule logically follows that where the co-obligors have received unequal benefits from the common obligation, the portion of the contribution that each must bear is according to the benefit that each has received"). Respondent is entitled to contribution from Appellant; Appellant is not entitled to contribution from Respondent. Point I is denied.

■ In his second point, Appellant argues that the trial court's judgment "erroneously applied the law in that the judgment expressly referred to and included as an attachment a copy of the original judgment entered prior to the trial de novo in the court below, and therefore, violated [Appellant's] right under section 512.270, RSMo, to have the case tried anew." We note that in the legal file Appellant prepared, there is no attachment to the trial court's January 18, 2001 ruling, so it is impossible for us to compare the original judgment with that of the trial de novo. That does not prevent us from disposing of this point, however, as a review of Appellant's argument assures us that his point is baseless.

Appellant cites the following portion of the judgment from the trial de novo to support his claim:

> Upon hearing evidence, judgment was entered on behalf of Plaintiff on or about October 30, 1997. Notice and findings of said judgment were reduced to writing by the Honorable Judge Henry

Westbrooke, Jr. on or about said date. A copy of Judge Westbrooke's notice of judgment and findings is attached hereto and marked as Plaintiff's Exhibit B.

That statement appeared in section I of the court's judgment, entitled "FACTS." Clearly, Judge Bacon made the statement for the purpose of providing the procedural history of the case. There is absolutely no indication that by viewing Judge Westbrooke's opinion, Judge Bacon failed to try the case "anew" as required by § 512.270, RSMo. Appellant also suggests that Judge Bacon's judgment inappropriately relied upon that of Judge Westbrooke because the principal amount of damages awarded by both was $3,770.09. This is the amount Respondent sought. After finding the issues in favor of Respondent, Judge Bacon cannot be faulted for awarding Respondent the damages she requested as the evidence supports that amount. Point II is denied.

■ In his third point, Appellant claims that the trial court's judgment "erroneously applied the law in that the trial court wholly failed to make findings of fact and conclusions of law as properly requested by [Respondent] on the record prior to the commencement of the trial de novo." Rule 73.01(c), governing bench trials, provides that "[t]he court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party." It also states that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Failure of the trial court to prepare specified findings of fact as requested by counsel is error, but such error only mandates reversal if it "materially affects the merit of the action or interferes with appellate review." *Lattier v. Lattier*, 857 S.W.2d 548, 549 (Mo.App. 1993).

Appellant requested findings of fact on 10 issues, including:

1. Whether Plaintiff and Defendant executed a promissory note dated April 14, 1987, payable to Boatman's Bank as co-makers.

2. Whether Plaintiff received direct benefit from execution of the aforesaid note including at least $1,000.00.

3. Whether as co-makers of the aforesaid promissory note, Plaintiff and Defendant were jointly and severally liable upon the note as co-makers.

4. Whether Plaintiff and Defendant, as co-makers of the aforesaid note, owed a duty of contribution to each other pursuant to the Missouri provisions of the Uniform Commercial Code, Section 400.3–116, RSMo.

5. Whether Defendant received any benefit in exchange for the agreement attached to Plaintiff's Petition dated May 28, 1991, and if so, what that benefit was.

6. Whether Plaintiff suffered any detriment in exchange for the agreement attached to Plaintiff's Petition dated May 28, 1991, and if so, what that detriment was.

7. Whether total principal and interest payments upon the aforesaid promissory note totaled $20,615.90.

8. Whether total payments made by Defendant upon the aforesaid note totaled $15,222.65.

9. Whether the payments made upon the aforesaid note by Plaintiff totaled $5,393.25.

10. Whether Defendant is entitled to contribution from Plaintiff for the sum of $4,914.70, and if not, why not.

Regarding Appellant's first and third requests, the court found, "On or about April 4, 1987, Plaintiff and Respondent jointly executed a Promissory Note for a home

equity loan with Boatman's Bank...." Regarding Appellant's second request, the court found, "Plaintiff executed a draft against the aforesaid home equity loan in the amount of one thousand dollars, ($1,000.00) on April 22, 1987." Regarding Appellant's fourth and tenth requests, the court stated,

> In as much as the terms of the verbal contract were clear and unambiguous, Plaintiff would not be liable for contribution as a matter of law. Obligating Plaintiff to pay contribution on the home equity loan, in light of the verbal contract, would clearly be a matter of unjust enrichment where Defendant received over 92% of the benefit of the loan as well as the exclusive benefit of resale of the subject Lincoln Continental
> . . .

Regarding Appellant's fifth request, the court stated, "the consideration for Defendant, or 'benefit' to Defendant was accessability [sic] to financing at a lower interest rate for purchase of his Lincoln Continental automobile." Regarding Appellant's sixth request, the court stated, "[t]he consideration for Plaintiff, or 'detriment' was the knowledge that without Defendant's agreement to make all payments on any monies drawn of any home equity loan, Plaintiff could be liable for making the subject payments by executing home equity loan documents." Regarding Appellant's ninth request, the court found that "the total amount paid by Plaintiff on the subject home equity loan" was "five thousand four-hundred seventy-one dollars and eighty-five cents, ($5,471.85)."

No findings were made regarding Appellant's seventh and eighth requests. Although the court's failure to make findings pursuant to those requests constitutes error, such failure does not materially affect the merit of the action or interfere with appellate review. *See Lattier*, 857 S.W.2d

at 549. Accordingly, reversal is not mandated. Point III is denied.

In his fourth and final point, Appellant argues that the trial court's judgment "erroneously applie[d] the law in that the judgment failed to apply and enforce the provisions of the Missouri Uniform Commercial Code, section 400.3–116, RSMo, ... which provision imposed a duty of contribution upon the parties." Appellant raised this same issue in his first point, which we addressed and denied. We deny this point for the same reasons.

The judgment of the trial court is affirmed.

PARRISH, and RAHMEYER, JJ., concur.