**EMERALD POINTE, L.L.C., and Emerald Pointe Property Owners Master Association, Plaintiff–Respondents,**

v.

**William JONAK and Deborah Jonak, Defendants–Appellants.**

No. 26919.

Missouri Court of Appeals, Southern District, Division One.

Aug. 7, 2006.

Motion for Rehearing or Transfer Denied Aug. 29, 2006.

Application for Transfer Denied Oct. 31, 2006.

---

Craig R. Heidemann, Bolivar, for Appellants.

Vincent F. O'Flaherty, Kansas City, for Respondents.

NANCY STEFFEN RAHMEYER, Presiding Judge.

William and Deborah Jonak (collectively, "Appellants")[1] appeal from a judgment granting Emerald Pointe, L.L.C. and Emerald Pointe Property Owners Master Association, Inc. (collectively, "Respondents") an injunction preventing Appellants from subdividing their property, declaring that Appellants did not have an easement to use a designated roadway, and finding Appellants in breach of contract and subject to Emerald Pointe[2] subdivision restrictive covenants. Appellants bring five points of appeal. We find merit to their appeal, reverse, and remand for a judgment in favor of Appellants as set out herein.

Gary and Patsy Snadon (collectively, "Snadons")[3] purchased property in Taney County with the intent to develop it into a residential subdivision known as Emerald Pointe. Gary testified at trial as the corporate representative of Respondents. A preliminary plat was prepared but never filed. Respondents did record a Declaration of Restrictions, Covenants, and Conditions ("the declaration") for the property in Emerald Pointe on July 26, 1994. Article I of the declaration stated, "all of the real property contained within the plat of Emerald Pointe recorded in Plat Book D,

Page 203–204, Taney County Recorder's Office" was subject to the declaration. The declaration was amended on two occasions after its initial recording; however, Article I was never changed. The declaration and amendments thereto established a general plan for the lots in Emerald Pointe to be developed and sold. Section 1 of Article IV of the declaration provides in pertinent part:

> The Developer may develop Emerald Pointe in phases, by subdivision into various Lots. It is envisioned that there will be several developments within the Development which shall include single family, multi-family, condominium units and timeshare units. .... This Declaration, as amended or modified, is in furtherance of a general plan for the subdivision, improvement and sale of said real property and is established for the purpose of enhancing the value, desirability, and attractiveness of said real property and every part thereof.

Section 1 of Article VIII of the declaration provides in pertinent part, "[n]o structure, residence, accessory building, ... lot drainage works, ... or other improvements shall be constructed or maintained upon any Lot, ... unless complete plans ... shall have been submitted and approved in writing by the Architectural Committee." Section 2 of this same article further provides that the Architectural Committee has sole discretion to refuse or

---

1. Deborah Jonak claims that she is the titled owner and the sole purchaser of property in Emerald Pointe; however, she testified at trial, "I believe—I believe I'm the sole owner. *I'm not positive.*" (emphasis added). We shall treat Appellants as joint tenancy owners without deciding the issue. When referring to Appellants individually, we shall refer to them by their first names for ease of reference and intend no disrespect.

2. Whether or not the word "Pointe" ends in an '—e' or not varies depending upon the documentation and references in this case. Since the developers entitled the subdivision itself Emerald Pointe, we shall retain the '—e' ending for ease of reading and consistency throughout this opinion.

3. When referring to Respondents individually, we shall refer to them by their first names for ease of reference and intend no disrespect.

approve any plans which are not suitable or desirable for aesthetic or other reasons.

Section 2 of Article IX provides that "[a]ll Lots shall be used, improved and devoted exclusively as a one-family dwelling and no gainful occupation, profession, trade, or other nonresidential use shall be conducted on any such Lot." Section 3(a) of Article VII includes an annual assessment in the amount of $200.00 per single family residence.

Appellants were the first purchasers of residential real estate from the Snadons purportedly within the Emerald Pointe subdivision. Deborah and the Snadons executed the contract for sale and purchase of the lot for $32,000 in December of 1995. The contract also contained a clause stating "Purchasers received a copy of the declaration of restrictions, covenants & conditions of Emerald Pointe on Wednesday December 13th, 1995." On December 21, 1995, the Snadons and Deborah executed an amendment to the contract. This amendment referenced the declaration as being in existence.

After closing, Appellants received a general warranty deed containing a metes and bounds description for their property. The final sentences of the deed state, "TOGETHER WITH AN ACCESS EASEMENT OVER AND ACROSS THE EXISTING PRIVATE ROAD. SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY." At the time of purchase, Appellants' property was adjacent to the main roadway in Emerald Pointe, Emerald Pointe Drive. A second path leading to a cul-de-sac was "roughed in" by the Snadons. This pathway is referred to in the record as Timberline Court. Gary testified:

On the preliminary [plat], this—this road [Timberlake] came up and this *was going* to be the access to their lot. So it would—and a cul-de-sac *was built* here

(indicating). In the agreement that we made the cul-de-sac *was going to be moved* at the request of [Appellants] to this area here, so that their access would be off of that cul-de-sac.

(emphasis added). Gary further testified that he used a bulldozer to clear up that pathway and also had it staked. At the time of trial, Timberline Court had water and sewer lines laid, but it was not paved. Gary testified it was his intent that "the existing private road" referred to in the deed granting an easement to Appellants was Timberline Court, and not Emerald Pointe Drive. The only reason he had not finished the road with paving is because a house had not been built on the road.

At trial, Deborah admitted to receiving the declaration and having an opportunity to read the restrictions contained in it. Deborah testified that on the date of purchase she believed that the terms of the declaration applied to the property she purchased. The preliminary plat shown to Deborah showed large estate lots; however, after Appellants purchased the property, a final plat was filed for the Emerald Pointe subdivision. That plat was completely different from the original plat, both in the numbers and in the size of the lots. Furthermore, Appellants' property is shown with the word "exception" written on it in the final plat.

Several tracts have been sold and actual homes have been built around Appellants' property. Appellants' property is now surrounded on all sides by property within the Emerald Pointe subdivision and, in order to reach their property, Appellants must pass through the gated front entrance of the subdivision. On or about April 13, 2002, Appellants sought and obtained approval from the Taney County Commission to subdivide their land into five lots. It was their intention to put in three residential driveways and connect

them to Emerald Pointe Drive. Up to the date of the trial, Appellants had not sold any of their five lots within the subdivided tract.

Respondents filed a suit for injunction, declaratory judgment, and breach of contract seeking to (1) stop Appellants from subdividing their property, (2) prevent them from accessing their property from Emerald Pointe Drive, and (3) have the court declare that their property was subject to the provisions of the declaration. The trial court ruled in favor of Respondents on the declaratory judgment count and breach of contract count. The trial court awarded no damages for a breach of contract. As to the request for declaratory judgment, the trial court declared that Respondents had not granted Appellants an easement for access over and across Emerald Pointe Drive and declared that Appellants' property was subject to the terms of the declaration.

Appellants raise five claims of trial court error. In Point I, Appellants posit that the trial court erred in declaring that Respondents did not grant an easement for use over and across Emerald Pointe Drive. In Points II and III, Appellants' contention is that the trial court incorrectly declared that the declaration applied to their property. In Point IV, Appellants argue that a breach of contract claim cannot be established without a finding of actual or nominal damages. Finally, in Point V, Appellants posit that William Jonak is not a proper party to this case, and that the trial court lacked subject matter jurisdiction to enter a judgment against him.

The standard of review of this court-tried case is derived from Rule 84.13(d).[4] This Court affirms the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Lane v. Lensmeyer*, 158 S.W.3d 218, 225 (Mo. banc 2005). The evidence and all reasonable inferences drawn therefrom are to be viewed in a light most favorable to the verdict, and deference is afforded to the trial court's assessment of credibility of witnesses. *Abbott v. Perez*, 140 S.W.3d 283, 290 (Mo. App. E.D.2004). Evidence contrary to the verdict is to be disregarded. *Karolat v. Karolat*, 151 S.W.3d 852, 856 (Mo.App. W.D.2004). The trial court is permitted to believe or disbelieve all, part, or none of the testimony and other evidence. *In re Marriage of Johnson*, 865 S.W.2d 412, 414 (Mo.App. S.D.1993).

### Point I

■ Appellants claim the trial court erred in declaring that they had no right to use Emerald Pointe Drive to access their land because there was not a latent ambiguity in the deed, which specifically granted Appellants an access easement over and across the existing private road and, on the date of the conveyance, Emerald Pointe Drive was the only existing private road touching Appellant's property. Appellants further contend the result of this order landlocks their property.

Respondents, on the other hand, contend that the language in the deed is ambiguous and, therefore, parol evidence was admissible to explain the location of the easement and the intent of the parties. Respondents argue the intention of the parties, as evidenced by Gary's testimony, was for the cul-de-sac to provide access to Appellants' property and not Emerald Pointe Drive. The deed describes the property sold "TOGETHER WITH AN ACCESS EASEMENT OVER AND ACROSS THE EXISTING PRIVATE

---

4. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

ROAD." The issue then is what constitutes "the existing private road."

◼ To determine this issue, we first must determine if the court properly admitted parol evidence on the issue of the location of the "existing private road." The parol evidence rule is a rule of law, and not merely a rule of evidence. *Brewer v. Devore*, 960 S.W.2d 519, 522 (Mo.App. S.D.1998). The parol evidence rule bars the use of extrinsic evidence unless the instrument to be interpreted is ambiguous. *Royal Banks of Mo. v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). Whether a document is ambiguous is a question of law. *Id.* Two types of ambiguities in an instrument may exist: (1) a patent ambiguity and (2) a latent ambiguity. *Id.* at 362. There is no patent ambiguity if the face of the deed does not raise any ambiguities. *Id.* On its face, this deed is clear—the easement references "the existing private road."

◼ A latent ambiguity, on the other hand, arises where a writing is clear and unambiguous on its face, but the meaning is made uncertain due to collateral matters. *Id.*

> Where an uncertainty in the description of the land conveyed does not appear upon the face of the deed but evidence discloses that the description applies equally to two or more parcels, a latent ambiguity is said to exist and extrinsic evidence or parol evidence is admissible to show which tract or parcel of land was intended.

*Wolf v. Miravalle*, 372 S.W.2d 28, 32 (Mo. 1963). However, courts must not use parol evidence to create an ambiguity that otherwise does not exist. *Risch v. Risch*, 72 S.W.3d 274, 279 (Mo.App. S.D.2002).

The language granting an easement states, "TOGETHER WITH AN ACCESS EASEMENT OVER AND ACROSS THE EXISTING PRIVATE ROAD," thus, initially, there is a factual question as to the existence of one or more private roads. Gary testified that two roads abutted Appellants' property, Emerald Pointe Drive and a road running into a cul-de-sac ("Timberline Court").[5] Respondents rely on Gary's testimony that only the paving and curbing of Timberline Court remained for it to be "finished" and that Timberline Court was intended to be the access road to Appellants' property. This road was bulldozed, staked, and cleared for usage and now has water and sewer lines laid down, with only the paving and curbing remaining to be done. On the other hand, Appellants contend that the *only* existing road at the time of executing the deed was Emerald Pointe Drive because Timberline Court did not resemble a traditional paved road. Timberline Court was even mentioned in the initial contract under paragraph 24(A), where it states "Contract to be contingent upon developer relocating cul[-]de[-]sac indicated on attached drawing Exhibit E." Appellants claim that "[t]he plain and ordinary meaning of 'road' as understood by reasonable persons is a paved, ready to use pathway capable of supporting motor vehicle traffic without resort to four wheel drive or brush guards."

We find substantial evidence does not support the trial court's determination that Appellants were not granted an easement to use Emerald Pointe Drive. Emerald Pointe Drive was the only existing road touching Appellants' property at the time of the conveyance. On the preliminary plat, Gary testified Timberline Court "was going" to access Appellants' lot. The cul-

---

5. Exhibit 10 refers to the road running into a cul-de-sac as "Timberline Court" and, there-fore, will be referred to as such throughout this opinion.

de-sac "was going to be moved" per the agreement. There is no testimony that at the time of the conveyance of the deed that Timberline Court was in fact an existing private road. Gary's testimony of his intent for a future road is not to be considered. The testimony indicates that there was only one private road referenced in the deed. Gary's testimony concerning the factual circumstances at the time of the deed was properly considered, but that testimony indicates no ambiguity in the deed. Gary's trial testimony concerning his future intentions that the cul-de-sac provide access to Appellants' property cannot be used to defeat the plain, clear words of the instrument at the time of deed. Point I is granted.

## POINTS II and III

In Points II and III, Appellants argue that the trial court erred in ruling that their property was subject to the declaration.[6] The trial court found,

28. That the property purchased by [Appellants], Lot 44, is subject to the Declaration of Restrictions, Covenants and Conditions of Emerald Pointe as executed and recorded at Book 328, Pages 663–686 in the office of the Taney County Recorder pursuant to a reciprocal negative easement or an implied reciprocal servitude . . . [.]

Although the trial court found Appellants to be bound by the terms set forth in the declaration of Emerald Pointe as executed

and recorded at Book 328, Pages 663–686 in the office of the Taney County Recorder, the trial court relied upon the contract between the parties. We initially note the contract for sale does not bind Appellants to the declaration. A reference to the declaration in the contract appears in paragraph 24, which is titled "SPECIAL AGREEMENTS." Paragraph 24(E) states, "Purchasers received a copy of the declaration of restrictions, covenants & conditions of Emerald Pointe on Wednesday, December 13th, 1995." Paragraph 24(C) states, "Contract to be contingent upon review and approval of Architectural Committee's Guidelines." An amendment to the contract states,

Buyer and Seller hereby agree to remove contingency # 24, Item C, Special Agreements: "Contract to be contingent upon review and approval of Architectural Committee's Guidelines," as owner/developer Gary W. Snadon and Patsy A. Snadon state that the only Architectural Guidelines there will be are those already contained in the Declaration of Restrictions, Covenants and Conditions of Emerald Pointe.

The clauses in the contract, and its amendments, referencing the declaration do not bind Appellants to the declaration.

Moreover, the deed does not subject the property to any declaration of restrictions. The doctrine of merger holds that "when parties have performed their

---

6. Points II and III raise the same error of law and application of law to the facts. In Point III, Appellants have not properly challenged the correct trial court ruling because in a court-tried case, there is no verdict to direct. *See Spry v. Director of Revenue*, 144 S.W.3d 362, 367 (Mo.App. S.D.2004) (explaining why a directed verdict motion has no role or function in a trial to the court without a jury). Appellants were entitled to request the court to decide Respondents were not entitled to relief based upon the facts and the law. *Id.*

In the present case, after Respondents presented evidence and rested, Appellants did request that judgment be entered in their favor because of a failure of proof on the part of Respondents. The trial court stated it would interpret the request as a motion for directed verdict and then denied the motion. Appellants presented evidence. We shall address the merits of Appellants' contention that Respondents failed to sustain its burden that the restrictive covenants apply to Appellants' property.

respective obligations of delivery and acceptance of a deed, and title to the property passes, the contractual obligations of the parties are discharged and merged into the deed." *Taylor v. Seaman*, 932 S.W.2d 912, 914 (Mo.App. W.D.1996).

The doctrine of merger is a creature of policy derived by the courts from the ancient rule of *caveat emptor. Crowder v. Vandendeale*, 564 S.W.2d 879, 881 n. 3 (Mo. banc 1978). Under this doctrine, when a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract becomes *functus officio[ ]* and the rights of the parties rest thereafter solely on the deed. *Artman v. O'Brien*, 398 S.W.2d 24, 27 (Mo.App. E.D.1965). In other words, the terms of the contract of sale are merged into the deed, "so that the obligations of the sale contract are extinguished when the deed is delivered." *Smith v. Old Warson Dev. Co.*, 479 S.W.2d 795, 800 (Mo. banc 1972). However, there are several exceptions to the merger doctrine, including fraud, accident, or mistake. *Estate of Kielhafner*, 639 S.W.2d 115, 117 (Mo.App. E.D. 1982). Furthermore, "contractual provisions as to consideration to be paid by the purchaser are ordinarily not merged in the deed." *Don King Equip. Co. v. Double D Tractor Parts*, 115 S.W.3d 363, 374 (Mo.App. S.D.2003) (internal quotation marks omitted). Moreover, collateral matters ancillary to the transfer are also excluded from operation of the merger doctrine[.]

*Wills v. Whitlock*, 139 S.W.3d 643, 651 (Mo.App. W.D.2004). Clearly, the doctrine of merger applies. The contract was solely for the sale of real estate; there were no ancillary agreements. There was not an allegation of fraud, accident or mistake. The contract for sale was fully merged into the deed. The deed refers to a plat, which contains restrictive covenants specifically excepting the property in the deed. The declaration clearly and unambiguously exempts Appellants' property from being bound by it.

■ The general warranty deed executed in this case contains a clause stating, "SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY." The declaration was executed in 1994. The declaration is titled "DECLARATION OF RESTRICTIONS, COVENANTS AND CONDITIONS OF EMERALD POINTE." Article I is titled "PROPERTY SUBJECT TO THE EMERALD POINTE RESTRICTIONS." Article I provides, in pertinent part,

The Association hereby declares that all of the real property contained within the plat of EMERALD POINTE recorded in Plat Book *D*, Page *203–204*, Taney County Recorder's Office, is and shall be held, conveyed, encumbered, leased, occupied, built upon or otherwise used, improved or transferred in whole or in part, subject to this Declaration, as amended or modified from time to time.

By its plain language, the property subject to the declaration consists of all real property contained within the plat of Emerald Pointe recorded in Plat Book D, Pages 203–204, Taney County Recorder's Office. This declaration was amended twice, but neither amendment changed the language in Article I—declaring which property was subject to the declaration.

■ "[T]he rules governing construction of restrictive covenants on realty are generally the same as those applicable to any ... contract." *Big River Hills Ass'n, Inc. v. Altmann*, 747 S.W.2d 738, 742 (Mo.App. E.D.1988). It is established that in the absence of fraud, mistake, or duress, the parol evidence rule precludes extrinsic evidence of prior or contemporaneous oral agreements that vary or contra-

dict the terms of an unambiguous written instrument. *Poelker v. Jamison,* 4 S.W.3d 611, 613 (Mo.App. E.D.1999). The parol evidence rule constitutes substantive law, and not merely an evidentiary rule. *Don King Equip. Co. v. Double D Tractor Parts, Inc.,* 115 S.W.3d 363, 372 (Mo.App. S.D.2003). The parol evidence rule is based on the assumptions that (1) written instruments are more reliable than human memory and (2) varying or negating written terms by extrinsic oral evidence opens the door to perjury. *Poelker,* 4 S.W.3d at 613. Parol evidence is not permitted to show that an ambiguity exists in an otherwise unambiguous written instrument, or that there exists obligations other than those contained in the written instrument. *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 324 (Mo. banc 1979). Moreover, extrinsic evidence violating the parol evidence rule that is admitted, regardless of any lack of objection made to its introduction, must be ignored. *Poelker,* 4 S.W.3d at 613.

No plat was recorded at or before the sale. The subsequent plat, which was recorded after Deborah bought her property, specifically showed her property as an exception to the recorded plat. The trial court erred in considering parol evidence, which contradicted the express terms of the deed, to find that the restrictive covenants in the declaration applied.

The terms of the declaration are clear and unambiguous as applying to real property contained within the plat of Emerald Pointe recorded in Plat Book D, Pages 203–204. The clear language of Article I is that if Appellants' property was con-

tained in Plat Book D, Pages 203–204, then the restrictive covenants in the declaration applied. If their property was not included in Plat Book D, Pages 203–204, the restrictive covenants in the declaration did not apply. There was no evidence presented at trial showing that Appellants' property was contained within Plat Book D, Pages 203–204. Plat Book D was not admitted into evidence.[7]

What Respondents are attempting to do is avoid the clear language of the declaration by using parol evidence to show that Deborah knew about, and agreed to be bound by, the restrictive covenants; however, the declaration is unambiguous as to which property is subject to the restrictions. Parol evidence cannot be used to create an ambiguity where a written instrument is otherwise unambiguous. *Craig,* 586 S.W.2d at 324. The unambiguous language limits interpretation of the declaration to examining the four corners of the instrument. *Hoag v. McBride & Son Inv. Co., Inc.,* 967 S.W.2d 157, 170 (Mo.App. E.D.1998). The only evidence that is proper is Plat Book D, Pages 203–204.

It does not matter whether or not Deborah had knowledge, actual or constructive, of the restrictive covenants in the declaration because the restrictive covenants only apply to the specific property in Plat Book D, Pages 203–204.[8] The parol evidence rule precludes the use of extrinsic evidence to show Deborah's knowledge and agreement to abide by the restrictive covenants in the declaration.[9] Any extrinsic evidence showing that Appellants agreed to be bound by the declaration would violate the

---

**7.** Furthermore, the parties all agree that Plat Book D, Pages 203–204, show Appellants' property as an "exception" in the plat.

**8.** As noted, the contract for sale merely references the declaration. It does not state that

Appellants' property is subject to the declaration.

**9.** No evidence at trial supports the contention that Appellants' property is contained within Plat Book D, Pages 203–204.

parol evidence rule because such evidence would negate or vary the unambiguous terms in the declaration.

■ Respondents argue that regardless of the fact that Plat Book D was not entered into evidence, *Campbell v. Stout,* 408 S.W.2d 585 (Mo.App.Spfld.D.1966), compels this Court to find that the restrictive covenants in the declaration must be enforced against Appellants' property because they developed the Emerald Pointe subdivision pursuant to a general plan or scheme of improvement and sold a substantial number of lots subject to the restrictive covenants found in the declaration. Respondents contended at trial, and in this appeal, that the doctrine of an implied reciprocal negative easement should apply even if Respondents failed to prove the restrictive covenants applied to Appellants' property. Respondents argue that Deborah's actual knowledge of the restrictions in the declaration at the time she purchased Appellants' lot support the doctrine of an implied reciprocal negative easement.

■ We find *Campbell* to be inapplicable. In *Campbell,* there was no issue as to the use of parol evidence to explain a claimed ambiguity, nor did it involve a restrictive covenant contained in a recorded instrument.[10] In *Campbell,* the appellate court accepted as true for the purposes of the summary judgment that there was a common grantor with a properly filed plat. *Id.* at 588. It also accepted as true that the grantor inserted a restrictive covenant in all of the lots sold prior to the sale to one particular grantee, but that there was evidence indicating that same grantee held title to all of the restricted

lots and actually built all of the residences on the lots of the subsequent plaintiffs. *Id.* Furthermore, there was evidence that the grantee had made a statement to one of the plaintiffs that the use of the land was restricted to residential purposes. *Id.* After presenting both sides of the debate concerning the propriety of enforcing the restrictive covenants, the court chose not to "enter upon an abstract discussion of the law as it might be applied if we could extrapolate record facts sufficient to resolve the merits of this case." *Id.* at 589.

Campbell involved a question whether summary judgment was appropriately granted to a grantee under a common grantor. *Id.* at 586. Based upon the "scanty record" before the court and because of the "many subjective factual considerations involved which could conceivably be decisive one way or the other," the court determined a fair result could only be determined on the merits. *Id.* at 590. The court noted a Florida case, which indicated the law concerning implied restrictions appears complex precisely because the result in each case involves a balancing of the equities, which must be determined from the facts. *Id.*

In the present case, the Snadons are prohibited from introducing evidence outside of the declaration to expand the scope of the property subject to the covenants. Moreover, without the extrinsic evidence, the record is void of any evidence that Appellants' property was contained in Plat Book D, Pages 203–204. Further, Appellants' property is apparently shown with the word "exception" on the recorded plat of Emerald Pointe. The clear meaning of the word "exception" on the plat, when

---

10. As we have discussed, this deed contains a reference to a plat which excepts this property. "[I]f the recorded instruments contain the scope of the covenant, the landowners cannot expand that scope by introducing evidence outside of the recorded instruments." *Hoag,* 967 S.W.2d at 170 (*citing Kuhn v. Saum,* 316 Mo. 805, 291 S.W. 104, 105 (1926); *Kansas City v. Stith (In re Proceedings for Condemnation),* 409 S.W.2d 193, 199 (Mo.1966)).

considered in conjunction with Article I to the declaration, is that Appellants' property was not bound to the same obligations as the rest of the property in Emerald Pointe.

The deed received by Appellants was by metes and bounds and does not subject the property to any restrictive covenants as there was no recorded plat or recorded restrictive covenants. The preliminary plat shown to Deborah was significantly altered from the final plat which was recorded. The trial court had no basis in fact or law to subject Appellants' property to the Emerald Pointe Declarations. Thus, the trial court's ruling that Appellants' property was subject to the restrictive covenants in the declaration was not supported by substantial evidence. Because there was no substantial evidence to support the finding that Appellants' property was subject to the declaration, Point II is granted.

### Point IV

In Point IV, Appellants posit that the trial court erred in sustaining Respondents' claim of breach of contract because the trial court specifically found that Respondents did not prove any damages. To make a submissible case on a claim of breach of contract, the party alleging a breach must prove: (1) a valid contract exists; (2) the rights and obligations of each party; (3) a breach; and (4) damages. *Evans v. Werle,* 31 S.W.3d 489, 493 (Mo.App. W.D.2000). If a party fails to prove actual damages, however, proof of the existence of a contract and its breach will give rise to nominal damages. *Dierkes v. Blue Cross & Blue Shield of Mo.,* 991 S.W.2d 662, 669 (Mo. banc 1999); *Evans,* 31 S.W.3d at 493.

Appellants' argument that the trial court's failure to award any damages precluded a breach of contract is without merit. Respondents, as the parties alleging a breach, were only required to prove the existence of a contract and its breach. *Cf. Cohn v. Dwyer,* 959 S.W.2d 839, 845 (Mo. App. E.D.1997) ("Damages are not a *prima facie* element of a breach of contract claim."). After doing so, nominal damages may be awarded. Appellants have not presented any authority stating that a damage amount must be determined by the trial court and awarded to the party alleging the breach. *Cf. Tippin v. Curators of Univ. of Mo.,* 143 S.W.3d 720, 721 (Mo.App. W.D.2004) (affirming judgment of breach of contract with zero damages). Nominal damages must simply exist. A breach of contract claim is established once the party alleging the breach proves the existence of a contract and its breach. Point IV is denied; however, in denying the point, we do not retreat from our holding of Points II and III. Appellants are not bound by the Emerald Pointe restrictions. We simply deny the point as presented by Appellants.

### Point V

In Point V, Appellants contend that William was not a proper party to this case and that the trial court lacked subject matter jurisdiction over him. Appellants contend the court did not have authority over William and, thus, no subject matter jurisdiction in the matter. It is true that subject matter jurisdiction is a tribunal's statutory authority to hear a particular kind of claim. *In re Marriage of Hendrix,* 183 S.W.3d 582, 588 (Mo. banc 2006). It is also true that this Court has a duty to *sua sponte* review its subject matter jurisdiction because without it, this Court has no power to act. *Cook v. Cook,* 97 S.W.3d 482, 485 (Mo.App. W.D.2002).

Appellants misconstrue the law in claiming that the trial court lacked subject matter jurisdiction over any causes of action against William because Respondents failed to prove William had any legal inter-

est in the property; they have not provided any authority stating that a defense that a party is not a "proper party" to a case is a matter of subject matter jurisdiction. As noted in *Hendrix*, the tendency to call matters jurisdictional that are really assertions of legal error greatly confuses the notion of jurisdiction in civil cases. *Hendrix*, 183 S.W.3d at 590. Subject matter jurisdiction is the tribunal's statutory authority to hear a particular kind of case. *Id.* at 588. " 'The court must have cognizance of the class of cases to which the one to be adjudged belongs.' " *Id.* (*quoting Kristanik v. Chevrolet Motor Co.*, 335 Mo. 60, 70 S.W.2d 890, 894 (banc 1934)). The court had cognizance of this class of cases.

Appellants were obligated to raise the issue that William was not a proper party in interest to the trial court. The defense that one is not a proper party in interest may be waived if (1) it is not raised in the trial court and (2) it is not apparent from the record that one is not a proper party in interest. *See Don L. Tullis & Assocs., Inc. v. Gover*, 577 S.W.2d 891, 901 (Mo.App. S.D.1979); *State ex rel. Cmty. Heating & Air Cond. Co. v. Schwartz*, 452 S.W.2d 243, 248 (Mo.App.St. L.D.1970); *Hayes v. Jenkins*, 337 S.W.2d 259, 262 (Mo.App.1960). Clearly, then, the issue of whether William was a necessary party is not an issue of subject matter jurisdiction. That claim was waived by not raising it at any time with the trial court.

Moreover, it is not clearly apparent from the record that William is not a proper party to this case. When asked whether she and William owned the property as husband and wife, Deborah testified, "I believe—I believe I'm the sole owner. *I'm not positive.*" (emphasis added). Respondents alleged in their petition, "On or about April 13, 2002, defendants Deborah Jonak *and William Jonak* presented to the Taney County Planning Commission a proposal to subdivide Lot 44 in Emerald Pointe into five (5) separate lots." (emphasis added). Appellants admitted this allegation in their answer. This raises an inference that because William was involved in submitting a proposal to subdivide the property, he had an interest in the property. At the very least, it is not apparent from the record that William had no interest in the property. Therefore, the trial court did not err in assuming jurisdiction over William. Point V is denied.

The judgment is reversed and remanded with directions to the trial court to enter judgment in favor of Appellants quashing the injunction which prevented Appellants from subdividing their property, declaring Appellants have an easement to use Emerald Pointe Drive, and declaring that the declaration recorded in Plat Book D, Pages 203–204, Taney County Recorder's Office, does not apply to Appellants' property as set forth in their deed.

PARRISH and LYNCH, JJ., concur.