**C–H BUILDING ASSOCIATES, LLC, Appellant,**

v.

**Joe H. DUFFEY, et al., Respondents.**

**No. WD 73871.**

Missouri Court of Appeals, Western District.

Jan. 17, 2012.

Thomas E. Hankins, Gladstone, MO, for Appellant.

Michael P. Keleher, Gladstone, MO, for Respondents.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

C–H Building Associates, LLC ("C–H"), appeals the Circuit Court of Clay County's ("trial court") entry of summary judgment in favor of Joe and Mary Jane Duffey ("the Duffeys"). On appeal, C–H claims that the grant of summary judgment was in error because the trial court incorrectly interpreted this court's previous opinion as holding that C–H could not prove that the Duffeys had breached a real estate contract, when, in fact, the opinion merely held that C–H did not allege a breach sufficiently to support C–H's own motion for summary judgment. We agree with C–H in this respect, reverse the trial court's entry of summary judgment in favor of the Duffeys, and remand this matter to the trial court for further proceedings consistent with this opinion.

### Facts and Procedural Background[1]

Appellant C–H entered into a commercial real estate contract with Joe and Mary

---

1. On appeal from the grant of a motion for summary judgment, we view the facts in the light most favorable to the nonmovant. *Peters* *v. ContiGroup*, 292 S.W.3d 380, 386 (Mo.App. W.D.2009).

Jane Duffey. Joe Duffey owned a third of an entity called Liberty Homes. At the time the parties entered into the contract, Liberty Homes was a tenant on the subject real property.

The contract provides as follows:

[The Duffeys] agree[ ] to sell to [C–H] and [C–H] agrees to purchase from [the Duffeys] the real estate described in Exhibit A ... together with any buildings and improvements thereon, and all personal property used in the operation of the buildings and improvements ... and including the following: LEASE WITH LIBERTY HOMES TO BE 3 YEARS AT $3,000.00 PER MONTH TRIPLE NET ON THE NORTH APPROXIMATELY 2500 SQ FT OF BUILDING AT 100 CLAYVIEW DRIVE.[2]

After the closing, Liberty Homes stopped paying rent to the Duffeys and started paying rent to C–H. Liberty Homes paid C–H $3,000 per month, but not "triple net," which means that Liberty Homes was not paying a pro-rata share of the taxes, insurance, and maintenance. C–H attempted to negotiate a lease with Liberty Homes, but evidently negotiations deteriorated, and Liberty Homes vacated the property.

C–H and its owners[3] sued the Duffeys for breach of contract,[4] arguing that the absence of a lease with Liberty Homes under the terms described by the contract ("the lease") constituted a breach by the Duffeys. C–H moved for summary judgment. The motion mistakenly alleged that a lease existed between C–H and Liberty Homes. It also alleged that the Duffeys owed $103,647.08 for breaching the con-

tract. The circuit court granted C–H's motion.

On appeal, we reversed and remanded, holding as follows:

The quoted contractual language did not constitute an allegation of an obligation the Duffeys had to C–H concerning Liberty Homes' performance under the purported lease. Moreover, the absence of material facts depicting a breach by the Duffeys precludes an inference of any obligation. Nor can a breach be inferred from reading the allegations together. Because C–H did not allege an obligation or allege undisputed material facts depicting a breach by the Duffeys, it failed to make a prima facie showing entitling it to a summary judgment. Because C–H failed to make a prima facie showing, the trial court improperly granted the summary judgment.

*C–H Bldg. Assocs., LLC v. Duffey ("Duffey I"),* 309 S.W.3d 897, 900 (Mo.App. W.D. 2010) (internal citation omitted).

On remand, C–H re-filed its motion for summary judgment, adding the following allegations: (1) the existence of the lease was the decisive factor in C–H's decision to buy the subject property; (2) it did not learn that the lease did not exist until after the contract had been executed; and (3) the contract created an obligation for the Duffeys to ensure that the lease existed.

The Duffeys also filed a motion for summary judgment, arguing that, under the law of the case doctrine, it was entitled to judgment as a matter of law on C–H's breach of contract claim in that this court had held that relevant contract language did not create an obligation for the Duf-

---

**2.** We will refer to this paragraph as "the relevant contract language."

**3.** We will refer to C–H and its owners collectively as "C–H."

**4.** C–H initially brought other claims as well, but it dismissed those without prejudice.

feys to procure the lease or otherwise assure its existence. The circuit court granted the Duffeys' motion for summary judgment, denied C–H's motion for summary judgment, and entered judgment in favor of the Duffeys. C–H appeals.

## Standard of Review

We review the circuit court's action with respect to summary judgment motions de novo, which means we apply the same criteria that applied to the circuit court's review of the motions. *ITT Commercial Fin. Corp. v. Mid–Amer. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment should be granted to the defending party when there is no dispute of material fact with respect to *at least one* of the essential elements of the claimant's cause of action or *all* of the essential elements of the defending party's properly pled affirmative defense, and the facts show that the defending party is entitled to judgment as a matter of law. *Id.* at 381. Summary judgment should be granted to the claimant when there is no dispute of material fact with respect to *each* of the elements of its cause of action and *at least one* element of the defending party's properly pled affirmative defense, and the facts show that the claimant is entitled to judgment as a matter of law. *Id.*

## Legal Analysis

C–H argues that the circuit court erred in granting the Duffeys' motion for summary judgment [5] in that the law of the case doctrine does not control the "existence of an obligation" element of its contract claim because we did not hold that the relevant contract language was insufficient to create an obligation for the Duffeys to procure the lease. We agree.

■ To prevail on its breach of contract claim, C–H must show "(1) the existence of a valid contract; (2) the defendants' obligation under the contract; (3) a breach by the defendants of that obligation; and (4) resulting damages." *Duffey I*, 309 S.W.3d at 899.

■ The Duffeys argue that the law of the case doctrine negates the "obligation" element of C–H's contract claim. The law of the case doctrine states that a previous holding in a case is "the law of the case" and bars relitigation of issues "not only expressly raised and decided on appeal, but also those that could have been raised but were not." The doctrine governs successive adjudications involving the same issues and facts. *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 823 (Mo. banc 2011) (quoting *Walton v. City of Berkeley*, 223 S.W.3d 126, 129 (Mo. banc 2007)). Here, we previously noted that C–H's motion for summary judgment alleged that a lease with Liberty Homes existed when, in fact, it did not. *Duffey I*, 309 S.W.3d at 899. We then held that "[t]he quoted contractual language did not constitute an allegation of an obligation the Duffeys had to C–H concerning Liberty Homes' performance under the purported lease." *Id.* at 900.

If C–H had continued to maintain that a lease existed and that the Duffeys had an obligation to C–H pursuant to that lease, then the Duffeys would be correct that the law of the case would preclude C–H's pur-

---

5. C–H also argues that the circuit court erred in denying its motion for summary judgment; however, "[i]t is well established that a denial of a summary judgment is not a final judgment on the merits" and is, therefore, generally not appealable. *Metal Exch. Corp. v. J.W. Terrill, Inc.*, 173 S.W.3d 672, 677 (Mo.App. E.D.2005) (citing *Wilson v. Hungate*, 434 S.W.2d 580 (Mo. banc 1968)).

suit of its claim. On remand, however, C–H acknowledged that its assertion in the summary judgment motion that a lease existed was erroneous but maintains that the language in the contract evidences an obligation on the part of the Duffeys to effect a lease between C–H and Liberty Homes. C–H alleges that the Duffeys' obligation to broker the lease between C–H and Liberty Homes constituted part of the consideration of the purchase price for the property.[6] Our previous opinion did not decide this issue; it held only that C–H did not make sufficient allegations to support the trial court's grant of summary judgment in favor of C–H. Accordingly, a grant of summary judgment to the Duffeys based on the "law of the case" would have been in error.

■ The Duffeys also claim that the trial court's grant of summary judgment in their favor is supportable by the doctrine of merger and its effect on the real estate agreement. Again, we disagree.

■ The doctrine of merger instructs that "when parties have performed their respective obligations of delivery and acceptance of a deed, and title to the property passes, the contractual obligations of the parties are discharged and merged into the deed." *Taylor v. Seaman,* 932 S.W.2d 912, 914 (Mo.App. W.D.1996). The Duffeys claim, therefore, that even if they had had an obligation under the real estate contract to effect a lease between C–H and Liberty Homes, C–H's acceptance of the deed extinguished this obligation. There are noted exceptions to the doctrine of merger, however, including fraud, accident, and mistake. *Emerald Pointe, L.L.C. v. Jonak,* 202 S.W.3d 652, 661 (Mo. App. S.D.2006). "Furthermore, 'contractual provisions as to consideration to be

paid by the purchaser are ordinarily not merged into the deed.'" *Id.* (quoting *Don King Equip. Co. v. Double D Tractor Parts,* 115 S.W.3d 363, 374 (Mo.App. S.D. 2003)). Although the consideration at issue here is on the part of the seller and not the purchaser, C–H has consistently maintained that the Duffeys' duty to effect a lease between C–H and Liberty Homes was part of the consideration, in addition to the property itself, for the purchase price that C–H paid to the Duffeys. Also, C–H alleged that the Duffeys represented to C–H that a lease with Liberty Homes existed and that it was only after the purchase of the property that C–H learned that there was not, in fact, a lease in operation. Accordingly, C–H's claims are in the nature of mistake or perhaps fraud. This is precisely the type of case where merger does not apply, and the trial court's grant of summary judgment to the Duffeys cannot be sustained on this basis.

Because neither the law of the case nor the doctrine of merger is a valid basis for the trial court's grant of summary judgment in favor of the Duffeys, we consider whether it is otherwise justified. The parties continue to disagree about the meaning of the quoted contractual language. Again, the contract provides:

> [The Duffeys] agree[ ] to sell to [C–H] and [C–H] agrees to purchase from [the Duffeys] the real estate described in Exhibit A ... together with any buildings and improvements thereon, and all personal property used in the operation of the buildings and improvements ... and including the following: LEASE WITH LIBERTY HOMES TO BE 3 YEARS AT $3,000.00 PER MONTH TRIPLE NET ON THE NORTH APPROXIMATELY 2500 SQ FT OF

6. In support of this allegation, C–H cites the deposition testimony of Scott Page, the President of the bank that financed the loan on the property.

BUILDING AT 100 CLAYVIEW DRIVE.

While C–H claims that this provision *clearly* requires the Duffeys to procure a lease on the property with the quoted terms between C–H and Liberty Homes, the Duffeys claim that the provision *clearly* affirms only that C–H had the right to negotiate a lease with Liberty Homes or, in other words, that the provision had no legal effect whatsoever. We now hold that the intent of the parties cannot be sufficiently determined based solely upon the quoted language from the real estate contract. Thus, on remand, the trial court should determine the Duffeys' obligations under the contract, if any, taking such additional evidence, including parol evidence, as is necessary.

### Conclusion

Because neither the law of the case nor the doctrine of merger support the trial court's grant of summary judgment in favor of the Duffeys, and because the intent of the parties with respect to any obligation on the part of the Duffeys to procure a three-year, $3,000–per–month, triple-net lease between C–H and Liberty Homes cannot fairly be determined solely by considering the four corners of the real estate contract, we reverse the trial court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

JAMES M. SMART, JR., and VICTOR C. HOWARD, Judges, concur.